UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Oakey Bowyer**, <br><br> Plaintiff, <br><br> v. <br><br> **Jeff's Home Improvements, LLC**, and **Jeff Manley** <br><br> Defendants. | No. <br><br><br> **COMPLAINT** |

Plaintiff, Oakey Bowyer ("Plaintiff"), sues the Defendant, Jeff's Home Improvements LLC ("Jeff's Home Improvements") and Jeff Manley("Manley") (collectively "Defendants") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for unpaid wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq and Ohio Revised Code Ann. ("ORC") § 4111.03 for Defendants' failure to pay Plaintiff all earned overtime wages.

2. The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark Best Freight Sys. Inc., 450 U.S. 728, 739 (1981). Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks. See 29 U.S.C. § 206(a). Under the FLSA, employers must pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek. See 29 U.S.C § 207.

3. ORC § 4111.03 establishes the law regarding overtime within the State of Ohio.

4. Plaintiff brings this action against Defendants for their unlawful failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").

5. Further, Plaintiff brings this action against Defendants for their unlawful failure to pay overtime due and owing Plaintiff in violation of ORC § 4111.03.

6. Defendants own and operate a "home services" company which provides renovation and home improvement for its customers in Northeast Ohio.

7. At all relevant times, Defendants have operated pursuant to a policy and practice of intentionally misclassifying Plaintiff an as independent contractor.

8. At all relevant times, pursuant to this misclassification, Defendants have willfully refused to pay overtime to Plaintiff.

9. In willfully refusing to pay overtime wages, Defendants have violated the overtime provisions of 29 U.S.C. § 207.

10. In willfully refusing to pay overtime wages, Defendants have violated the overtime provisions of Ohio Revised Code Ann. § 4111.03.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States. This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff occurred within the Northern District of Ohio, and Defendant regularly conducts business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

## PARTIES

13. At all material times, Plaintiff is an individual residing in Cuyahoga County, Ohio, and is a former employee of Defendants.

14. At all material times, Jeff's Home Improvements is an Ohio limited liability company licensed to transact business in the State of Ohio. At all material times, Jeff's Home Improvements does business, has offices, and/or maintains agents for the transaction of its customary business in Cuyahoga County, Ohio.

15. At all relevant times, Jeff's Home Improvements was an employer under the FLSA. The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee. At all relevant times, Jeff's Home Improvements had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants. As a person who acted in the interest of Defendants in relation to the company's employees, Jeff's Home Improvements is subject to liability under the FLSA.

16. At all material times, Jeff's Home Improvements was Plaintiff's "employer" as defined by Ohio Revised Code § 4111, *et seq*.

17. At all relevant times, Manley was the owner and operator of Jeff's Home Improvements and was Plaintiff's employer under the FLSA. At all relevant times, Manley had

the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants. As a person who acted in the interest of Defendants in relation to the company's employees, Manley is subject to liability under the FLSA.

18. At all material times, Manley was Plaintiff's "employer" as defined by Ohio Revised Code § 4111, *et seq*.

19. Plaintiff, in his work for Defendants, was employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

20. At all relevant times, Plaintiff, in his work for Defendants, was engaged in commerce or the production of goods for commerce.

21. At all relevant times, Plaintiff, in his work for Defendants, was engaged in interstate commerce.

22. Plaintiff, in his work for Defendants, regularly handled goods produced or transported in interstate commerce.

## NATURE OF THE CLAIM

23. Defendants do business as Jeff's Home Services and provides home renovation and improvement services to customers.

24. Plaintiff was hired by Defendant and worked for Defendant as a laborer from approximately January 6, 2022 through approximately December 2, 2022.

25. Manley, in his sole discretion, agreed to compensate Plaintiff at a rate of $40.00 per hour. Plaintiff was compensated this rate by Defendants regardless of how many hours he worked in a given workweek.

26. Plaintiff, in his work for Defendants, typically worked 50 to 60 hours or more per week.

27. Rather than classify Plaintiff as an employee, Defendants classified him as an independent contractor.

28. At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiff.

29. Plaintiff incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying him as independent contractor and failing to pay him overtime pay.

30. Defendants' misclassification of Plaintiff and as independent contractor was specifically intended to enhance Defendants' profit margins at the expense of its laborers and upon information and belief, Defendants misclassify all of their laborers as independent contractors.

31. Defendants' misclassification of Plaintiff was willful.

32. Defendants knew or should have known that it was improper to classify Plaintiff as an independent contractor.

33. Workers cannot "elect" to be treated as employees or independent contractors. Nor can workers agree to be paid less than the applicable minimum wage. Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce workers such as Plaintiff to waive their statutory rights and elect to be treated as independent contractors.

34. Any contract which attempts to have workers waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

35. The determining factor as to whether Plaintiff and was an employee or independent contractors under the FLSA is not the workers' elections, subjective intent, or any contract. Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or, rather, is economically dependent upon finding employment in others.

36. Under the applicable test, court use the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determine by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

37. The totality of circumstances surrounding the employment relationship between Defendants and Plaintiff establishes economic dependence by Plaintiff on Defendants and employee status. Plaintiff was in business for himself and truly independent, but rather are economically dependent upon finding employment in Defendants. Plaintiff was not engaged in occupations or businesses distinct from that of Defendants. To the contrary, the labor which Plaintiff provided was the basis for Defendants' business. Defendants obtained the customers who seek out home renovation and improvement services, and Defendants provided the workers who conduct the labor on behalf of Defendants. Defendants retained pervasive control over the business operation as a whole, and of Plaintiff.

38. Plaintiff did not exert control over any meaningful part of Defendants' business operation and did not stand as a separate economic entity from Defendants. Defendants exercised control over all aspects of the working relationship with Plaintiff.

39. The economic status of Plaintiff was inextricably linked to conditions over which Defendants had complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

40. Defendants exercised the following significant control over the work conditions of Plaintiff:

    a. The work performed by Plaintiff was essentially construction work;

    b. Defendants required Plaintiff to work in excess of 40 hours per week;

    c. Defendants paid Plaintiff a flat hourly rate for all hours worked in a given workweek;

    d. Defendants made the decision not to pay overtime to its laborers;

    e. Defendants directed Plaintiff with respect to which jobs to work on;

    f. Defendants supervised, and at times, remediated the quality of the work performed by Plaintiff;

    g. Defendants set the schedule for Plaintiff;

    h. Defendants required Plaintiff to wear Defendants' uniform;

    i. Defendants subjected Plaintiff to Defendants' rules and Plaintiff was subject to discipline if he violated Defendants' rules;

    j. The amount of work the Defendants required Plaintiff to perform deprived him of essentially all other economic opportunities.

41. Plaintiff did not have the opportunity to exercise the business skills and initiative necessary to elevate his status to that of an independent contractor: he owns no enterprise, nor did he maintain a separate business structure or facility.

42. Plaintiff had no control over customers, nor did he actively participate in any efforts to increase Defendants' customer base or profit, or to improve business in any capacity.

43. Defendants did not permit Plaintiff to hire or subcontract other qualified individuals to provide additional construction services to customers, thereby increasing their revenue, as an independent contractor in business for himself would have the authority to do.

44. Plaintiff made no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships. All capital investment and risk belonged to Defendants.

45. Defendants managed all aspects of the business operation, including without limitation attracting investors, establishing business and customer relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling of staff. Defendants provided all necessary capital to open and operate the business.

46. Plaintiff's work for Defendants was never intended to be temporary.

47. All actions and agreements by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

## COUNT ONE: FAIR LABOR STANDARDS ACT

48. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

49. Defendants willfully failed or refused to pay Plaintiff the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of his employment.

50. As a result, Defendants failed to compensate Plaintiff at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

51. Defendants' practice of willfully failing or refusing to pay Plaintiff the required overtime wage rate violates the FLSA, 29 U.S.C. § 207(a).

52. Defendants failed and/or refused to pay Plaintiff his final paycheck thereby failing to pay Plaintiff any wages whatsoever for that pay period.

53. Defendants' failure to pay Plaintiff any wages whatsoever violates the minimum wage requirements of FLSA, 29 U.S.C. § 206.

54. Defendants knew that – or acted with reckless disregard as to whether – its failure to pay Plaintiff minimum wage and overtime would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff's employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

55. Plaintiff is therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## COUNT TWO: OHIO REVISED CODE § 4111

56. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

57. Defendants failed or refused to pay Plaintiff and the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of his employment.

58. As a result, Defendant failed to compensate Plaintiff at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

59. Defendants' practice of willfully failing or refusing to pay Plaintiff and the Ohio Class Action Members at the required overtime wage rate violates the overtime provisions of ORC § 4111.

60. Defendants failed and/or refused to pay Plaintiff his final paycheck thereby failing to pay Plaintiff any wages whatsoever for that pay period.

61. Defendants' failure to pay Plaintiff any wages whatsoever violates the minimum wage requirements of ORC § 4111.

62. Plaintiff istherefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional amount equal to two-times the unpaid wages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Oakey Bowyer, respectfully requests that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid minimum and overtime wages, statutory damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

RESPECTFULLY SUBMITTED this 27th day of January, 2023.

    SIMON LAW CO.

    By: /s/ *James L. Simon*
    James L. Simon (OH No. 0089483)
    5000 Rockside Road
    Liberty Plaza Building – Suite 520
    Independence, OH 44131
    Telephone: (216) 816-8696
    Email: james@simonsayspay.com